IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. **03-cv-1184-JLK**

**ROBERT GOODSON,**

    Plaintiff,

v.

**NATIONAL ASSOCIATION OF LETTER CARRIERS, AFL-CIO;**
**NATIONAL ASSOCIATION OF LETTER CARRIERS LOCAL BRANCH 5996;**
**JEFFREY HARTMAN;**
**JOHN FECHISIN;**
**RUSSELL SHAMAH;**
**GIL BARELA; and**
**TIMOTHY MURPHY,**

    Defendants.

---

ORDER ON DEFENDANTS' 12(b)(3) MOTION FOR JUDGMENT ON PLEADINGS

---

KANE, J.

    Plaintiff Robert Goodson, a United States Postal Service employee of African-

American descent, asserts two claims for relief against his union, the National

Association of Letter Carriers (NALC), NALC Local Branch 5996, and five individual

officers of Local 5996 (collectively, the "Union Defendants"), based on allegations that

the union discriminated against him in his attempts to pursue grievances against the

Postal Service on his own behalf and on behalf of a coworker.  The first claim is

asserted under 42 U.S.C. § 1981, assertion violations of his rights to equal employment

and to participate in and enforce his collective bargaining agreement with the United

States Postal Service. The second asserts a breach of the duty of fair representation

implied under the National Labor Relations Act (NLRA), 29 U.S.C. § 141 *et seq.* by the

United States Supreme Court. The Union Defendants move on several grounds for

judgment on the pleadings, arguing Goodson's allegations fail to state viable causes of

action under either theory. Discovery has been stayed during the pendency of this

Motion. Under an exceedingly liberal standard of review, I will allow Goodson's claims

to proceed and deny the Motion.

I.

A Rule 12(c) motion for judgment on the pleadings is subject to the same

standards as a Rule 12(b)(6) motion to dismiss. *Mock v. T.G. & Y Stores, Co.*, 971 F.2d

522, 528 (10th Cir. 1992). Like a motion to dismiss filed in lieu of an answer and directed

solely to an opponent's complaint, a Rule 12(c) motion for judgment on the pleadings

may be granted only if it appears beyond a doubt that plaintiff is unable to prove any

set of facts that would entitle him to relief. *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th

Cir. 2002).

The Union Defendants seek entry of judgment on multiple aspects of Goodson's

two claims. With respect to the duty-of-fair-representation (DFR) cause of action under

the NLRA, Defendants deny such a claim can be maintained against individual union

2

officers in their individual capacities (a point conceded by Goodson) and they maintain

the DFR claim against NALC and Local 5996 is time-barred.  In the alternative,

Defendants contend Goodson's allegations with respect to the acts of NALC and Local

5996 fail to state a viable DFR claim for relief.  With respect to Goodson's § 1981 claim,

the Union Defendants seek judgment on all aspects of that claim premised on conduct

directed to Goodson's coworker, Andre Pounds, rather than Goodson himself, or

otherwise unrelated to the enforcement on Goodson's behalf of the USPS-NALC

collective bargaining agreement.  Defendants also argue Goodson's allegations are

insufficient to state a claim for vicarious liability against NALC under § 1981.  I address

these arguments seriatim.

## II.

### A.  Goodson's § 1981 Claim.

The Civil Rights Act of 1866, codified at 42 U.S.C. § 1981, provides that all

persons are guaranteed the same right "to make and enforce contracts, to sue, be

parties, give evidence, and to the full and equal benefit of all laws and proceedings . . .

as is enjoyed by white citizens."  It is well established that § 1981 affords a federal

remedy against discrimination in private employment contracts and applies to acts of

discrimination by unions as well as employers.  *Johnson v. Railway Express Agency*,

421 U.S. 454 (1974).   As specifically applied to unions, § 1981 bars racial discrimination

in the performance of their function as an agent for employees.  *Waters v. Wisconsin Steel Works of International Harvester Co.*,  427 F.2d 476, 482 (7th Cir. 1970)(citing *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409 (1968)).

   Though not a model of clarity nor particularly strong, Goodson's Complaint states a claim against the Union for violation of § 1981.  Specifically, Goodson claims the Union and the Union Defendants discriminated against him on the basis of race by colluding with and condoning efforts by the USPS to thwart his representation of Pounds and to retaliate against him (Goodson) for his persistence in doing so, and by failing to pursue grievances on his behalf for USPS's discriminatory and retaliatory actions.  (Compl. ¶¶ 17-21.)  Goodson avers generally that the Union's collusion and inaction was motivated by racial discrimination, and the Union Defendants argue this conclusory allegation is insufficient to state a claim for race-based discrimination by the Union.  Applying an exceedingly liberal standard of review under Rule 12, I note the Union's objection but will allow Goodson's claim to proceed.  *See Jennings v. American Postal Workers Union*, 672 F.2d 712, 716 (8th Cir. 1982)(though far from artful, plaintiff's allegation that union failed to process her grievance because she was black stated claim for violation of § 1981); *generally Goodman v. Lukens Steel Co.*, 482 U.S. 656 (1987)(union's avoidance of asserting discrimination claims so as not to antagonize employer or in deference to perceived desires of white membership would violate §

1981's guarantee of equal rights under the law); *Woods v. Graphic Communications*,

925 F.2d 1195 (9th Cir. 1991)(systematic refusal to file grievance on behalf of black

member concerning race discrimination may violate § 1981's requirement that all citizens

enjoy same right to enforce contracts as white citizens).

In doing so, I note Goodson's § 1981 claim is limited to a claim for violation of §

1981's guarantee of equal rights in the enforcement of the Union's collective bargaining

agreement with USPS.  His allegations do not state viable claims under § 1981 for

hostile work environment or for any harm or damages suffered by anyone other than

himself.

Specifically, in proceeding on his claim under § 1981, Goodson should take note

of the following clarifying rulings:

•      Goodson's § 1981 claim is cognizable only to the extent Goodson seeks redress

       for discrimination he suffered himself.  He will not be allowed to seek or to

       recover damages or any other remedy for discrimination allegedly suffered by

       Pounds.

•      Goodson's claim for hostile work environment under § 1981 fails for a lack of

       necessary factual allegations that would support such a claim against the Union

       under *Witt v. Roadway Express*, 136 F.3d 1424, 1432 (10th Cir. 1998) and

       *Goodman v. Lukens*.  Specifically, Goodson would need to allege either that he

5

suffered harassment by the *Union* that was pervasive or severe and the result of racial animus, or that he suffered this type of harassment by his employer, and despite having knowledge of that race-based harassment by the USPS against Goodson, the Union nevertheless intentionally and purposefully refused to pursue a grievance on his behalf.  Goodson's Complaint falls far short of making the necessary allegations.

- In the event Goodson is inclined to seek leave to amend his Complaint to make the necessary allegations for a hostile environment claim, he should note that his failure at a later date to come forward with sufficient actual and admissible evidence to support those allegations will not only doom his claim under a summary judgment standard, but may subject him to the imposition of sanctions if his allegations appear to have been made without a good faith basis in fact.

- Goodson's § 1981 claim will be vulnerable under a summary judgment standard in general unless Goodson comes forward with evidence to support his claim that the Union Defendants refused to engage or represent him against USPS because of his race or, if applicable, because the Union did not want to antagonize or upset the USPS by pursuing discrimination claims on Goodson's behalf.  Based on the dearth of allegations suggesting a race-based motivation for the Union's alleged inaction, this may be difficult, and suggests Goodson

6

should consider his litigation risks in going forward.

- Finally, Defendant NALC's liability for the acts of Local 5996 or its representatives will not be established in this case unless Goodson comes forward with specific, additional facts. Common law theories of vicarious liability govern the liability of international unions for the discriminatory or retaliatory acts of an affiliated local in violation of anti-discrimination laws such as § 1981. *E.g. Berger v. Iron Workers Reinforced Rodmen Local 201*, 843 F.2d 1395, 1427-30 (D.C. Cir. 1988)(citations omitted). Thus, "an international union may be liable under section 1981 if, with knowledge of surrounding circumstances, it authorizes, ratifies, or approves a local's actions, the effects of which are sufficient to establish a claim of intentional discrimination against the local." *Id.* at 430. Accordingly, in order to obtain judgment against NALC for the acts of Branch 5996 through its representatives, Goodson will have to come forward with evidence not only that Branch 5996 discriminated against him by failing to support him or pursue grievances against USPS on his behalf because of his race, but also that NALC knew of the discrimination and "authorized, ratified or approved" the local's actions.

  B. Goodson's Duty of Fair Representation Claim – 29 U.S.C. § 141 et seq.

Section 8(b) of the National Labor Relations Act imposes a duty of fair

representation (DFR) on unions, precluding them, among other things, from restraining or coercing employees in the exercise of their other rights under the Act as well as from causing or attempting to cause an employer to discriminate against an employee.  29 U.S.C. § 158(b)(1) & (2); *see Considine v. Newspaper Agency Corp.*, 43 F.3d 1349, 1357 (10th Cir. 1994)(explaining development of duty).  As articulated by the United States Supreme Court in *Vaca v. Sipes*, 386 U.S. 171, 190 (1967), a union breaches its duty of fair representation if its actions are either "arbitrary, discriminatory, or in bad faith." A union's discriminatory conduct violates its duty of fair representation if it is "invidious." *Considine* at 1359.

Discrimination is invidious if based upon impermissible or immutable classifications such as race or other constitutionally protected categories, or arises from prejudice or animus.  *Considine*, 43 F.3d at 1359-60 (citing *Steele v. Louisville & Nashville R. Co.*, 323 U.S. 192, 203 (1944)).  *See also* Martin H. Malin, The Supreme Court and the Duty of Fair Representation, 27 Harv.C.R.-C.L.L.Rev. 127, 185 (1992) (concluding that the Supreme Court "initially developed the duty of fair representation to afford a pre-Civil Rights Act remedy for racial discrimination" against union members).  Goodson contends both NALC and Local 5996[1] breached their duties to

---

[1]      Because § 1981 provides no remedy against the individual Defendants Hartman, Fechisin, Shamah, Barela, and Murphy except in their capacity as representatives of the local union branch, and because Goodson concedes these Defendants cannot be held personally liable for a breach of a union's duty of fair representation, the sole Defendants in this action are NALC

represent him and others similarly situated fairly by "deliberately violating the [letter carriers'] collective bargaining agreement (CBA) based upon racial animus." Pl's Resp. at 8.

The same allegations that form the basis of Goodson's § 1981 claim form the basis of his claim for breach of the duty of fair representation.  Specifically, Goodson contends the Defendant officers refused to seek redress on Pounds's behalf for race discrimination suffered at the hands of his employer, and "thwarted" and "obstructed" Goodson's efforts to do so on the basis of Goodson's race.  (Compl. ¶ 17.)  Goodson also alleges the Defendant representatives retaliated against him by threatening him with physical removal from union meetings, falsely accusing him of misconduct, filing disciplinary charges against him that were contrary to the CBA, neglecting his grievances and those of Pounds, and colluding with USPS management officials to do these things on the basis of racial animus.  *Id.*

Goodson claims NALC "ratified" these acts "in retaliation for [Goodson's] legitimate persistence in lodging charges against the local union official's [sic] refusal to properly represent and not obstruct or interfere with his representation of Mr. Pound [sic] because of his race."  *Id.*  As with Goodson's § 1981 claim, these allegations state

and Local 5996.  *See Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 249 (1962) (union agents are exempt from personal liability for judgment against the union).  These Defendants remain named parties to this lawsuit, but only in their official capacities as representatives of Local 5996.

a claim for violation of the DFR, but one that is limited under the law.

*Goodson's representation of Pounds and "purely internal union affairs."*

Defendants contend Goodson's DFR claims must be dismissed to the extent they arise out of his representation of Pounds or out of events occurring at local union meetings. As set forth above, Goodson can only recover for injuries he suffered personally, not those that may have been suffered by Pounds. *See e.g. Considine*, 43 F.3d at 1362 (Union members may maintain an action for a breach of the duty of fair representation only if they demonstrate a causal relationship between the alleged misrepresentations and their injury)(internal quotations omitted)). He may rely on his representation of Pounds to prove his injuries, however, but only to the extent he alleges a causal connection between the union's discriminatory misconduct with respect to Pounds and his own injuries suffered in retaliation for his efforts on Pounds's behalf. Goodson may not rely on the Union's treatment of Pounds to establish his own claim for relief absent such a connection.

Defendants assert Goodson may not base his DFR claim on conduct that occurred solely within the context of local union meetings (such as threatening to remove him) because such conduct concerns "purely internal union affairs." *See James v. Int'l Bhd. of Locomotive Eng'rs*, 302 F.3d 1139, 1146 (10th Cir. 2002)(the duty of fair representation extends only to "matters regarding a union's role as the collective

bargaining agent for its member, including negotiation, administration, and enforcement of collective bargaining agreements" and not to "purely internal union affairs"). To the extent Goodson can establish a connection between the Union's conduct during meetings and retaliatory intent in an effort to avoid having to enforce the collective bargaining agreement on Pounds's or his own behalf, then the conduct is not "purely internal" under *James* and will establish a basis for DFR liability. If, however, Goodson cannot establish that connection, conduct that occurred during union meetings will not state a claim for breach of DFR.

*Goodson's claims arising out of his own grievances*
*are not untimely under a Rule 12(c) or 12(b)(6) standard.*

Next, the Union Defendants contend Goodson's DFR claims based on his own grievances are untimely under the applicable six-month statute of limitations. A claim for breach of duty of fair representation is subject to a six-month statute of limitations, *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151 (1983), and Defendants contend the events described in ¶ 17 of Goodson's Complaint resolved themselves no later than September 2000, more than two years before Goodson filed his Complaint in June 2003. Defendants deny the statute of limitations was tolled during the pendency of Goodson's internal union appeal against former Branch President Hartman, which was optional as opposed to mandatory under the CBA, citing *Volkman v. United Transportation Union*, 73 F.3d 1047, 1054-55 (10th Cir. 1996). His internal

11

appeal was not resolved until February 2003, within the applicable limitations period.

In *Volkman*, the Tenth Circuit distinguished between mandatory and optional union exhaustion requirements and concluded the mandatory appeals process at issue in that case did operate to toll the statute of limitations. *Id.* 73 F.3d at 1056. *Volkman* does not go as far as Defendants assert when they use it to argue the (purportedly) non-mandatory internal appeals process contained in the USPS collective bargaining agreement will not operate to toll the statute of limitations, and that argument is inappropriate under a Rule 12 standard in any event. Because the question of tolling is left to a court's discretion, I decline, in a Rule 12(c) motion on the pleadings, to conclude Goodson is not entitled to an inference of it here.

### III.

Based on the forgoing, Defendants' Rule 12(c) Motion for Judgment on the Pleadings is DENIED. This ruling is a close call, however, and Goodson is admonished his claims are unlikely to withstand summary judgment unless he comes forward with significant and substantial evidence to support his allegations, particularly his conclusory assertion that racial animus motivated the actions of Defendants Hartman, Fechisin, Shamah, Barela, and Murphy as representatives of Local 5996. Without evidence that similarly situated nonminority members were treated differently than he, or without other evidence tending to support an inference that he was discriminated or

retaliated against on the basis of his race, judgment will enter against Goodson and in

favor of Defendants and subject Goodson to payment of Defendants' costs.

 The stay of discovery previously entered in this case is lifted, and the case will

be set for a scheduling conference forthwith.

 Dated this 21st day of June, 2005, at Denver, Colorado.


_____
s/JOHN L. KANE
U.S. SENIOR DISTRICT COURT JUDGE