IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. **03-cv-01184-JLK**

**ROBERT GOODSON,**

    Plaintiff,

v.

**NATIONAL ASSOCIATION OF LETTER CARRIERS, AFL-CIO;
NATIONAL ASSOCIATION OF LETTER CARRIERS LOCAL BRANCH 5996;
JEFFREY HARTMAN;
JOHN FECHISIN;
RUSSELL SHAMAH;
GIL BARELA; and
TIMOTHY MURPHY,**

    Defendants.

_____

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
_____

KANE, J.

In this long-standing discrimination case, Plaintiff Robert Goodson, an African-American United States Postal Service ("USPS") employee, asserts two claims for relief against his union, the National Association of Letter Carriers ("NALC"), NALC Local Branch 5996 ("Local 5996"), and five current and former officers of Local 5996 (collectively, the "Local Defendants"), based on allegations that Defendants discriminated against him because of his race. Specifically, Goodson claims the Local Defendants violated his rights protected under 42 U.S.C. § 1981 by failing to enforce his collective bargaining agreement with the USPS and claims NALC and the Local

Defendants violated their duties of fair representation implied under the National Labor Relations Act ("NLRA"), 29 U.S.C. § 141 *et seq.*

I note at the outset that Plaintiff's claims have been both addressed – and oppugned – in my ruling on Defendants' Rule 12(c) Motion for Judgment on the Pleadings. *See Goodson v. National Ass'n of Letter Carriers*, 2005 WL 1459729 *1 (D. Colo. 2005)(applying "an exceedingly liberal standard of review" Defendants' Motion would be denied and Goodson's claims allowed to proceed to discovery). In rejecting Defendants' Motion, I observed as follows:

> This ruling is a close call, however, and Goodson is admonished his claims are unlikely to withstand summary judgment unless he comes forward with significant and substantial evidence to support his allegations, particularly his conclusory assertion that racial animus motivated the actions of Defendants Hartman, Fechisin, Shamah, Barela, and Murphy as representatives of Local 5996. Without evidence that similarly situated nonminority members were treated differently than he, or without other evidence tending to support an inference that he was discriminated or retaliated against on the basis of his race, judgment will enter against Goodson and in favor of Defendants and subject Goodson to payment of Defendants' costs.

Defendants now move for summary judgment, arguing a failure of the evidence adduced during discovery to support Goodson's discrimination claims under the standards previously applied. In the event the evidence supports an inference of discrimination by the Local Defendants, Defendant NALC disclaims any vicarious liability for such discrimination on grounds that it was unaware and uninvolved in the Local's activities with respect to Goodson and asserts, in the alternative, that Goodson's claims against it are time-barred. Because I GRANT Defendants' Motion on the merits

of Goodson's discrimination and fair representation claims, I need not reach NALC's vicarious liability and statute of limitations defenses.

## I. Facts and Procedural History.

For purposes of summary judgment, I accept the following facts as true.

At all times relevant to the issues raised in this lawsuit, Plaintiff Robert Goodson was employed by the USPS and a member of NALC and NALC Local Branch 5996. Goodson served as a union steward, "off and on," from approximately 2000 to 2004 and handled on his own and others' behalf "dozens" of grievances against various USPS officials. (Goodson Decl. 3.)  Specifically, in February 2000, Goodson investigated an incident involving another African-American employee, Andre Pounds, and a white employee, Robert Maloney, in his capacity of union steward. As a result of his investigation, Goodson concluded that Maloney instigated the altercation and that Pounds should receive a lesser punishment than Maloney.  Shortly thereafter Goodson resigned his position of union steward, in part, because he did not approve of the resolution proposed by Local 5996 President, Defendant Jeffrey Hartman, that placed blame on Pounds for the incident.

On January 28, 2000 Goodson received an N-TOL #1 Letter from the USPS regarding his absence from work in December 1999. An N-TOL #1 Letter is a form of discipline under the Collective Bargaining Agreement ("CBA") between NALC and USPS. Goodson grieved the N-TOL #1 Letter through the Union. Defendant Timothy Murphy represented Goodson at the "Step 1" grievance stage without resolution. Hartman

represented Goodson at the "Step 2" grievance stage. Hartman and USPS management met on March 31, 2000, again without resolution. Nearly six months passed before Hartman and USPS officials met again regarding Goodson's grievance. On September 19, 2000, Hartman and USPS resolved the grievance by agreeing that USPS remove the N-TOL #1 Letter from Goodson's personnel file effective September 28, 2000.  N-TOL #1 Letters can only adversely affect employees under the CBA mandated "progressive discipline" regime while the letter remains in the personnel file.

On February 4, 2000 Goodson received an "official instruction" from USPS to discontinue using a stool to "case"[1] his assigned mail. Goodson filed a grievance through the Union and again Murphy represented Goodson at the "Step 1" stage without resolution.  Hartman represented Goodson at the "Step 2" stage and resolved the grievance on July 20, 2000. The resolution allowed Goodson to use a stool to case his mail for the lowest of the six casing shelves. Goodson had used a stool to case all six shelves. Hartman did not confer with Goodson regarding the grievance.  Also, Hartman did not insist that USPS management conduct a comparison test to see if the stool negatively effected Goodson's ability to case his mail efficiently. The comparison test is required by the CBA.  After resolution of the stool grievance Goodson continued to use a stool to case all six shelves but USPS did not further officially discipline him.  However,

---

[1] A "case" is what Postal Service employees call a structure with several shelves, each containing multiple slots that a letter carrier must use to organize the mail on his or her route. This operation is called "casing" and can take several hours. (Hartman Decl. ¶ 8.)

Goodson was "harassed many times" by USPS management for continuing to use a stool to case all six shelves. (Goodson Decl. 8.) On June 22, 2001, a "class" grievance, separate from Goodson's grievance but including and affecting Goodson and white carriers, resulted in USPS agreeing to abide by the CBA and allowing the letter carriers' use of a stool to case all levels of shelving absent specified circumstances. (Defs.' Br. Supp. Mot. Summ. J. Ex. K.)

Goodson was not satisfied with Local 5996's treatment of him because he felt the N-TOL Letter and stool grievance resolutions should have had better outcomes and that Hartman was retaliating against him for the Pounds/Maloney incident. Based on Hartman and Local 5996's handling of Goodson's grievances, in April 2002, Goodson charged Hartman with misconduct under the NALC constitution. Goodson alleged, inter alia, that Hartman inflamed racial tensions unnecessarily by handling the Pounds/Maloney incident poorly and then retaliated against Goodson because he refused to agree to Hartman's proposed resolution. Goodson claimed that Hartman's retaliation included mishandling and neglect of grievances filed by Goodson. A Fact Finding Committee found no merit to Goodson's claims and the majority of the members of Local 5996 approved that finding. Goodson then appealed Local 5996's rejection of the charges to NALC. The NALC Board of Appeals rejected Goodson's appeal on February 20, 2003. Goodson commenced this action on June 27, 2003.

## II. Merits.

*A. Summary Judgment Standard.*

Rule 56(c) of the Federal Rules of Civil Procedure permits entry of summary judgment where the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  In reviewing the present motion, I must accept as true the evidence presented by Goodson as the non-movant and draw all justifiable inferences in his favor.  *See Simms v. Oklahoma ex rel. Dep't Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).  Although the movant must show the absence of a genuine issue of material fact, it need not negate the nonmovant's claim.  *Id.*  Once the movant carries this burden, the nonmovant cannot rest upon its pleadings, but "must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."  *Id.*  "The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine'; an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant."  *Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997).

Under this standard, Goodson's claims fail as a matter of law.

*B. Evidence of Racial Discrimination Against Goodson by Local 5996*

Under 42 U.S.C. § 1981, Goodson must establish a prima facie case of racial discrimination by showing that "(1) the plaintiff belongs to a protected class; (2) that he suffered an adverse employment action; and (3) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination." *See Hysten v.*

*Burlington N. & Santa Fe Ry. Co.*, 296 F.3d 1177, 1181 (10th Cir. 2002); *see also Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1227 n.6 (10th Cir. 2000). As an African-American, Goodson is a member of a protected class. Goodson provided evidence that he suffered adverse employment actions in the form of the N-TOL letter and official discussion he received. Goodson also suggests he suffered "stiffer" disciplinary actions because of poor union representation because both his N-TOL letter and official discussion could possibly have been resolved either at an earlier stage of the grievance process, and/or with better results. Assuming, for the sake of argument, that the inefficient or less than ideal resolution of what ultimately were successful grievances constitute "adverse" employment actions, Goodson then relies on his own affidavit as well as the affidavits of Adrian Perea and Alan Pounds to suggest these actions were motivated by racial animus.  As tenuous as Goodson's § 1981 theory of racial discrimination is, I will nevertheless assume his evidence is sufficient to make a prima facie case.

Once Goodson establishes a prima facie case of discrimination, the burden switches to Defendants to produce evidence that they acted without discriminatory motives or intent. *See Kendrick*, 220 F.3d at 1229-30. I find, as Goodson predicts in his brief, that the Defendants meet their burden of production by proffering evidence tending to show that Local 5996 handled Goodson's grievances reasonably and in a manner unrelated to his race or any other illegitimate discriminatory factor. (Pl.'s Br. 34.)  As Defendants point out, Hartman's resolution of the NTOL # 1 Letter was in fact favorable

7

to Goodson (Hartman Decl. ¶ 7) and, to the extent Hartman made any errors in the resolution of Goodson's stool grievance, those errors did not affect Goodson because Goodson continued to use the stool to case all his mail and the USPS never disciplined Goodson further. (*Id.* at ¶ 10; Goodson Dep. 52-53.)  The key evidentiary question before me is whether Goodson offers any evidence establishing that the Defendants' non-discriminatory motive, i.e., that they acted "reasonably" and without racial animus, is unworthy of credence and therefore a pretext for discrimination. *See Kendrick*, 220 F.3d at 1230 (applying *Randle v. City of Aurora*, 69 F.3d 441 (10th Cir. 1995)); *see also Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255-56 (1981).  Goodson's evidence fails because it cannot not create the necessary inference of pretext.

1. Evidence of Pounds' Treatment.

In my Order on Defendants' 12(c) Motion for Judgment on the Pleadings, I specifically admonished Goodson that a causal connection between any discriminatory treatment of Pounds and Goodson's own injuries would be necessary to survive summary judgment. 2005 WL 1459279, *2.  Goodson fails to make this causal connection and therefore cannot rely on Pounds' treatment to prove his own injuries. Goodson relies only on the suggestion of racial animus toward Pounds to establish the fact of racial animus toward his – i.e. the suggestion that Pounds, an African-American, was allegedly discriminated against based on race establishes that Goodson, also an African-American, was discriminated against based on race for standing up for Pounds.  As an initial matter, the "suggestion" that Pounds suffered race-based discrimination is not evidence of

discrimination. Even if Goodson had such evidence, moreover, such evidence would not be sufficient to demonstrate, under a summary judgment standard, a causal connection between Pounds' treatment and his own. *See English v. Colo. Dept. of Corrections*, 248 F.3d 1002, 1010 (10th Cir. 2001) ("[E]vidence that [the defendant] allowed a culture of racial hostility to flourish . . . [is insufficient because the plaintiff] must show some nexus between this circumstantial evidence and [the defendant's actions against the plaintiff."). Allegations alone will not get Goodson beyond the evidentiary barrier established by Rule 56(c). Absent a *factual* nexus between Pound's treatment and Goodson's injuries, circumstantial evidence of Hartman's racial animus towards Pounds – even assuming such were established – cannot support a finding of discrimination against Goodson. *See id.* Based on the evidence in the record to date, no reasonable trier of fact could rely on the Pounds/Maloney incident to infer pretext or racial animus on the part of the Local Defendants against Goodson.

### 2. Other Evidence of Pretext.

I made clear in my previous ruling that Goodson needed to come forward with "significant and substantial evidence to support his allegations, particularly his conclusory assertion that racial animus motivated the actions of Defendants." 2005 WL 1459729 *2. In response, Goodson offers evidence that other minorities were treated poorly by Local 5996 officials and that whites were treated more favorably than he in relation to the stool grievance. (*See generally* Goodson, Perea, Alan Young Decls.) This evidence, while indicating possible poor treatment of certain individuals, does not create

a question of fact as to whether the Defendants' assertion that they disciplined or processed and pursued Goodson's grievances in a non-discriminatory manner pretextual. *See English*, 248 F.3d at 1010 (holding that allegations of racial prejudice were insufficient to carry the plaintiff's "burden of showing pretext" because it did not rebut the defendant's asserted non-discriminatory motivation). The evidence fails because it does not cast doubt on Defendants' stated non-discriminatory reasons for handling Goodson's grievances as they did.  Moreover, like Pound's suggestion that he was treated adversely on the basis of race, Perea and Young's testimony that they were treated adversely, without any connection of their treatment to Goodson's, fails to support an inference of pretext in the treatment of Goodson.  *See id.* (holding that "some nexus between this circumstantial evidence [of racial bias]" and the adverse employment action is necessary to show pretext).

      Goodson relies heavily on Perea's statements that Hartman mishandled his grievances because he was Mexican-American to establish Hartman acted with racial animus in his handling of Goodson's grievances.  Unfortunately, Perea's assertions of racial discrimination are as vague and devoid of the necessary discriminatory nexus as Goodson's.  Perea, for example, states his belief that Goodson, Alan Young and Pat Chitkoksoong suffered racial discrimination. Goodson and Young are African-American, while Chitkoksoong is Asian. Perea's subjective beliefs notwithstanding, his affidavit is simply devoid of any evidence that African-Americans, Mexican-Americans or Asian-Americans generally were discriminated against on the basis of race.  To the extent any of

these individuals established he was the subject of race-based discrimination, that fact, without more, cannot support a race-based claim on the part of Goodson.

Goodson's own treatment likewise fails to create a question of material fact regarding pretext. It is worth repeating that Goodson *won* his grievance regarding the NTOL letter and suffered no adverse employment action as a result of his stool grievance.[2] And while Hartman may not have resolved Goodson's grievances as satisfactorily as another union official might have, the assertion is wholly speculative as Goodson presents no evidence that Hartman resolved white employees' grievances with any more gusto. *C.f. Kendrick*, 220 F.3d at 1230 (explaining that a plaintiff can show pretext "by providing evidence that he was treated differently from similarly-situated employees").  Thus, because both whites and minorities, including Goodson, were positively affected by the "class" stool grievance resolution, Goodson cannot rely on it to show pretext in the handling of his individual grievance. *See Randle v. Aurora*, 69 F.3d 441, 454 n.20 (10th Cir. 1995) (noting that an action affecting all employees "does not suggest . . . that the defendant was motivated by illegal discrimination").

Finally, Goodson's own statements offer alternative, nondiscriminatory reasons for Hartman's actions.  Goodson suggested in his internal charges to NALC that Hartman's mishandling of his grievances was an attempt to curry favor with USPS management and

---

[2] While the "class" stool grievance had a better resolution than Goodson's individual stool grievance, Goodson enjoyed the benefits of the "class" resolution as did all other similarly situated letter carriers. Goodson, moreover, continued to case his mail in direct contravention of the ruling he received on his grievance with no further disciplinary consequences.

11

advance Hartman within NALC by clearing "Step 3" grievances quickly. (Pl.'s Br. Attach. 6 at 5-6.)  Also, Goodson suggested that a conflict of interest, caused by Hartman allowing a USPS manager to remain a union member, resulted in Goodson's poor treatment. *Id.*  These assertions further undermine Goodson's attempt to demonstrate racial animus as a motivator of Hartman's actions or that Hartman's non-discriminatory motive of reasonableness was a pretext for such animus.

Because Goodson has come forward with no evidence from which a reasonable trier of fact could find Hartman's actions, or the actions of the Local Defendants generally, a pretext for invidious race-based discrimination, Goodson's § 1981 claim fails as a matter of law under summary judgment standards.

### *C. Vicarious Liability of Defendant NALC.*

Though not necessary for the disposition of this case, I briefly discuss Goodson's vicarious liability theory.[3] In my June 25, 2005 Rule 12(c) Order, I stated that Goodson

---

[3]  Also, I have not reached the period of limitations issues raised by the Defendants because their resolution is not necessary for the disposition of this case. However, I do note that Goodson's claims are likely time-barred. Goodson would need to show that his charges to NALC constituted an internal remedy that would toll the periods of limitations for his claims. *See Frandsen v. Brotherhood of Railway, Airline & Steamship Clerks, Freight Handlers, Express and Station Employees*, 782 F.2d 674, 681 (7th Cir. 1986) (discussing whether internal remedies should toll the period of limitations for a duty of fair representation claim). This is an open question in this case. However, Goodson is significantly burdened by the fact that he did not file his internal, non-mandatory charges against Hartson until *after* the six month and two year period of limitations expired for the DFR and § 1981 claims respectively. *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 169-70 (1983) (holding that a six-month period of limitations is applicable to a duty of fair representation claim); *see Cross v. Home Depot*, 390 F.3d 1283, 1288-89 (10th Cir. 2004) (explaining that Colorado's residual two-year period of limitations would apply to a § 1981 claim actionable before the 1991 amendment to § 1981).

must "come[] forward with specific, additional facts" to establish a viable vicarious liability claim against NALC.  2005 WL 1459729 *2.  In response, Goodson invokes Perea's testimony that NALC's National Business Agent, Gil Barela, knew of racial discrimination against Perea, Goodson and two others and failed to act. (Perea Aff. 18.) Perea does not state that Barela or anyone else from NALC had any involvement with or responsibility for the specific grievances or discriminatory actions alleged by Goodson.

NALC can only be vicariously liable for Local 5996's actions if an agency relationship exists "with respect to the particular discriminatory practices" *and* "whether, under section 1981, an agency relationship . . . is sufficient to impute from the local to the international the requisite discriminatory intent." *Berger v. Iron Workers Reinforced Rodmen Local 201*, 843 F.2d 1395, 1430 (D.C. Cir. 1988) *clarified on reh'g*, 852 F.2d 619 (D.C. Cir. 1988). In the union context, "an agency relationship cannot simply be presumed rather than proved." *Id.* at 1431. NALC must have actual control over the discriminatory practices of Local 5996 to create an agency relationship in a § 1981 case. *See id.* Most courts that find agency relationships in union discrimination contexts do so because the international participated in or approved of contract provisions or official union policies that were *themselves* discriminatory. *See, e.g.*, *Berger*, 843 F.2d at 1426-27; *Patterson v. Am. Tobacco Co.*, 535 F.2d 257, 270 (4th Cir. 1976); *Sagers v. Yellow Freight Sys., Inc.*, 529 F.2d 721, 737 (5th Cir. 1976).[4] By contrast, Goodson does not

---

[4] *But see Robinson v. Laborers' International Union of North America AFL-CIO*, 1989 WL 162783 *2-3 (N.D. Ohio 1989) (holding an international union could be vicariously liable for

allege that any provisions of the CBA or official policies of the union are themselves discriminatory. Thus, NALC's participation in negotiating the CBA cannot serve as basis for an agency relationship "with respect to the particular discriminatory practices." *Berger*, 843 F.2d at 1430.

NALC can also be liable for racial discrimination by Local 5996 if NALC "authorizes, ratifies, or approves a local's [intentional discrimination]." *Berger*, 843 F.2d at 1430. Assuming for the purposes of summary judgment that NALC agent Gil Barela knew of Local 5996's discrimination against Goodson, NALC must then authorize, ratify, or approve the discrimination to possess the necessary intent to discriminate under § 1981. *See id.* There is no evidence, through Perea or otherwise, of any such ratification or approval.

### *D. Duty of Fair Representation*.

Section 8(b) of the National Labor Relations Act imposes a duty of fair representation (DFR) on unions, precluding them, among other things, from restraining or coercing employees in the exercise or their other rights under the Act as well as from causing or attempting to cause an employer to discriminate against an employee. 29

---

a local's discrimination because it negotiated the referral provision that the local allegedly discriminated against the employee with and because the AFL-CIO regularly notified the international of discrimination charges filed against the local). *Robinson* is distinguishable on its facts and constitutes a high water mark for imputing liability on a national for the acts of its local in handling individual grievances. I decline to adopt the *Robinson* court's reasoning that an agency relationship can be based on an international's participation in negotiating a CBA when a plaintiff does not allege that any provision in the CBA is discriminatory.

U.S.C. § 158(b)(1) & (2); *see Considine v. Newspaper Agency Corp.*, 43 F.3d 1349, 1357 (10th Cir. 1994) (explaining the development of the duty). As articulated by the United States Supreme Court in *Vaca v. Sipes*, a union breaches its duty of fair representation if its actions are either "arbitrary, discriminatory, or in bad faith." 386 U.S. 171, 190 (1967). A union's discriminatory conduct violates its duty of fair representation if it is "invidious." *Considine*, 43 F.3d at 1359. Discrimination is invidious if based upon impermissible or immutable classifications such as race or other constitutionally protected categories, or arises from prejudice or animus. *Considine*, 43 F.3d at 1359-60 (citing *Steele v. Louisville & Nashville R.R. Co.*, 323 U.S. 192, 203 (1944)). As fully set forth above, Goodson does not put forth evidence sufficient for a reasonable trier of fact to conclude that racial animus or prejudice motivated either the Local or National Defendants' actions. Accordingly, summary judgment for the Defendants on the DFR claim is appropriate.

## IV. Conclusion.

Based on the foregoing, I GRANT Defendants' Motion for Summary Judgment and ORDER that judgment enter for Defendants, and against Mr. Goodson, on each of his claims. Goodson does not present sufficient evidence for a reasonable trier of fact to conclude that Defendants acted in contravention of the protections afforded Goodson under 42 U.S.C. § 1981 or of their duty of fair representation. Accordingly, the Defendants are entitled to judgment as a matter of law.

Dated March 29, 2007.                    **s/John L. Kane**
                                         SENIOR U.S. DISTRICT JUDGE